**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINOD KUMAR,<br><br>                                Petitioner,<br><br>v.<br><br>PAM BONDI, Attorney General et al.,<br><br>                                Respondents. | Case No.:  3:26-cv-00337-RBM-MMP<br>Case No.:  3:26-cv-00502-RBM-MMP<br><br>**ORDER:**<br><br>**(1) CONSOLIDATING CASES; AND**<br><br>**(2) GRANTING PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1]** |

On January 15, 2026, Petitioner Vinod Kumar ("Petitioner") filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 *pro se*, which was docketed as *Kumar v. Bondi*, Case No. 26-cv-00337-RBM-MMP, ECF Nos. 1–2.  Shortly thereafter, Petitioner, by and through counsel, filed a second Petition for Writ of Habeas Corpus.  *Kumar v. Bondi*, Case No. 26-cv-00502-RBM-MMP, ECF No. 1.

Both petitions rest on the same facts and legal issues—Petitioner claims he is being unlawfully detained in violation of the Fifth Amendment's Due Process Clause and applicable statutes.  As such, consolidation of these actions will conserve judicial resources

1

3:26-cv-00337-RBM-MMP

and permit the efficient resolution of Petitioner's claims. *See* Fed. R. Civ. P. 42(a); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). The Court therefore sua sponte **CONSOLIDATES** these actions and the later-filed Petition shall be deemed the operative Amended Petition. *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket.").

For the reasons set forth below, the Amended Petition is **GRANTED**.

## I.     BACKGROUND

**A.     Factual Background**

Petitioner, a citizen of India, entered the United States without inspection on or around May 8, 2023. (Doc. 1 ¶ 2.)[1] Petitioner was apprehended by United States Customs and Border Patrol shortly thereafter. (*Id.*) On May 10, 2023, the United States Department of Homeland Security ("DHS") released Petitioner from custody on parole pursuant to section 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5). (*Id.*; *see* Doc. 8-1 at 1.) Petitioner's parole was valid until July 11, 2023. (Doc. 1 ¶ 2.) "As a condition of his parole, Petitioner was required to report to the Immigration and Customs Enforcement (ICE) office near his final destination within 60 days or face removal from the United States." (*Id.*) On that same day, Petitioner was issued a Notice to Appear ("NTA") charging him as a noncitizen present in the United States without admission or parole. (*Id.* ¶ 3 (citing 8 U.S.C. § 1182(a)(6)(A)(i)); *see* Doc. 6-1 at 12.).

On or around November 1, 2023, Petitioner filed an application for asylum which remains pending. (Doc. 1 ¶ 4.) "As an asylum applicant, Petitioner has work authorization and a social security number." (*Id.*; *see* Doc. 6-1 at 10 (stating that Petitioner filed a Form I-765 on April 19, 2024, which expires on April 28, 2029).) On May 3, 2024, an

---

[1] The Court cites to the filings in the later-filed action, Case No. 3:26-cv-0502-RBM-MMP. Specifically, the Court cites the paragraph numbers of the Amended Petition and the CM/ECF electronic pagination for other citations unless otherwise noted.

3:26-cv-00337-RBM-MMP

immigration judge ("IJ") terminated Petitioner's "original removal proceedings [without prejudice] based on both parties' failure to comply with the briefing schedule and accordingly, finding that DHS failed to adequately support [its] charges of removability." (Doc. 6-1 at 2 n.2; *see* Doc. 6-1 at 24.)

On December 1, 2025, while working as an Uber driver and attempting to enter Marine Corps Base Camp Pendleton, "Petitioner was arrested by ICE without prior notice." (Doc. 1 ¶ 5; *see* Doc. 6-1 at 10.)  On January 26, 2026, DHS issued Petitioner a new NTA and "initiated removal proceedings charging Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I)." (Doc. 6-1 at 2, 12.)  Petitioner remains "detained at the Otay Mesa Detention Center in San Diego, California." (Doc. 1 ¶ 11.)

**B.    Procedural Background**

On January 26, 2026, Petitioner, by and through counsel, filed the Amended Petition in Case No. 26-cv-00502-RBM-MMP.  (Doc. 1.)  On January 28, 2026, the Honorable Benjamin J. Cheeks issued an Order Setting the Briefing Schedule for the Petition.  (Doc. 4.)  On February 6, 2026, Respondents filed a Response.  (Doc. 6.)  As an exhibit, Respondents attached their Response filed in the first action.  (*See* Doc. 6-1.)  The action was transferred to the undersigned on February 10, 2026.  (Doc. 7.)  On February 13, 2026, Petitioner filed a Traverse ("Reply").  (Doc. 8.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id*. § 2241(c)(3).

3

### III.   DISCUSSION

Petitioner claims he is being detained in violation of the INA, bond regulations, and the Fifth Amendment's Due Process Clause.  (Doc. 1 ¶¶ 49–59.)  Respondents argue the Court lacks jurisdiction over the Petition because "Petitioner's claims arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings."  (Doc. 6-1 at 3–4.)[2]  Respondents further argue that "Petitioner's claims for alleged statutory and constitutional violations fail because he is subject to mandatory detention under 8 U.S.C. § 1225."  (*Id.* at 5.)

**A.   Jurisdiction**

As a preliminary matter, courts in this District have consistently rejected Respondents' argument that similarly situated petitioners' claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and § 1252(b)(9).  *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1159–62 (S.D. Cal. 2025) (maintaining jurisdiction to review lawfulness of parole revocation).

In this case, Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order.  Instead, Petitioner challenges the lawfulness of his re-detention and argues that his parole was revoked in violation of applicable statutory and regulatory provisions and due process.  (Doc. 8 at 2–9.)  He therefore seeks to enforce his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074(S.D. Cal. Sept. 3, 2025) (emphasis in original); *see Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *1 (S.D. Cal. Nov. 24, 2025) ("There will be jurisdiction if DHS failed to follow the law when

---

[2]  Respondents alternatively argue that "the Court should ensure Petitioner properly exhausts administrative remedies."  (Doc. 6-1 at 4 n.3.)  However, a request to exhaust administrative remedies would be futile because Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1225(b). *See Omer G.G. v. Kaiser*, —F. Supp. 3d—, 2025 WL 3254999, at *4 n.7 (E.D. Cal. Nov. 22, 2025).

4

3:26-cv-00337-RBM-MMP

revoking parole."). Accordingly, § 1252(g) does not strip the Court of jurisdiction.

Section 1252(b)(9) also does not present a jurisdictional bar to the Petition. This provision was "intended to 'channel judicial review over f*inal orders of removal* to the courts of appeals,' not 'foreclose *all* judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (emphasis in original) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). "Adopting Respondent's application of § 1252(b)(9) would permit an excessive detention to take place by the time a final order of removal was eventually entered." *Noori*, 807 F. Supp. 3d at 1161. In rejecting such an expansive interpretation of § 1252(b)(9), the Supreme Court has explained that:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018).

This logic applies equally here. As previously noted, Petitioner is not challenging the Government's decision to detain him in the first place—he challenges the legality of the revocation of his parole in violation of mandatory procedures and without due process. Accordingly, the Court has jurisdiction to review the lawfulness of Respondents' revocation of Petitioner's parole. *See Noori*, 807 F. Supp. 3d at 1159–62.

**B.     Due Process**

Petitioner contends the revocation of his parole and subsequent re-detention without notice or "*any* reason proffered by Respondents" violated the Fifth Amendment's Due Process Clause. (Doc. 8 at 6 (emphasis in original).) Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225 and "there is no basis to order Petitioner's immediate release from immigration detention" because Petitioner "was

served with a new [NTA], which served to terminate his parole status." (Doc. 6-1 at 5.) Respondents do not otherwise substantively address Petitioner's due process claims.

### 1.     Entitlement to Due Process Rights

The Fifth Amendment's Due Process Clause provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions of release.'" *Id*. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, Petitioner is not an "arriving" noncitizen but one that has been present in the United States for over two years. "This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal." *Noori*, 807 F. Supp. 3d at 1164 (citing *Yamataya v. Fisher*, 189 U.S. 86, 87, 99–100 (1903). As Petitioner "has passed through our gates," he "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Respondents argue that the issuance of a new NTA on January 26, 2026, terminated Petitioner's parole status. (Doc. 6-1 at 2, 5.) Even so, "[P]etitioner's liberty interest did not expire along with his parole." *Omer G. G.*, 2025 WL 3254999, at *5; *see D.L.C. v.*

6

3:26-cv-00337-RBM-MMP

*Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (collecting cases). "That the express terms of the [§ 1182] parole . . . allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized bond hearing prior to re-detaining the parolee." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time.'" *Omer G. G.*, 2025 WL 3254999, at *6 (quoting 8 C.F.R. § 212.5(e)(1), (e)(2)(i)). This requirement is "illusory if the noncitizen is entitled to neither a bond hearing in front of a neutral adjudicator, nor the ability to pursue habeas relief in court." *D.L.C.*, 2026 WL 145646, at *4.

Given his initial release from detention pursuant to § 1182(d)(5), Petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case. Petitioner is not subject to an order of removal, was able to apply for admission, and "was detained *before* he was scheduled to appear at his initial removal proceeding." *D.L.C.*, 2026 WL 145646, at *4 (emphasis in original). Respondents also granted Petitioner a five-year work authorization permit on April 19, 2024, almost a year after he was granted release on parole. (*See* Doc. 6-1 at 10.) And "[a]s a condition of his parole, Petitioner was required to report to the [ICE] office near his final destination within 60 days" from the date of his release. (Doc. 1 ¶ 2.) Respondents do not indicate why Petitioner was not detained at this ICE check-in. Thus, Respondents implicitly promised Petitioner's continued release, and Petitioner reasonably relied on that promise. *See Pinchi*, 792 F. Supp. 3d at 1032. "Because Petitioner has developed an interest in remaining during his time here, 'the procedures used to remove him must adequately protect' that interest." *Noori*, 807 F. Supp. 3d at 1163 (quoting *Make the Rd. New York v. Noem*, 805 F. Supp. 3d 139, 159 (D.D.C. 2025)).

### 2.      Adherence to Due Process

To determine the procedural protections required to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id*. at 335.

All three factors support a finding that Respondents' revocation of Petitioner's parole without an opportunity to be heard deprived Petitioner of his due process rights. First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole.  Petitioner's "release from ICE custody after [his] initial apprehension reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria." *Pinchi*, 792 F. Supp. 3d at 1034.  "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara*, 800 F. Supp. 3d at 1136.  Petitioner was therefore "entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." *Noori*, 807 F. Supp. 3d at 1165; *see Araujo*, 2025 WL 3278016, at *2 ("Due process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination.").

While Respondents argue the new NTA constituted written notice of the termination of Petitioner's parole, Respondents served Petitioner with the new NTA almost a month *after* he was detained.  (Doc. 6-1 at 2, 5 (citing 8 C.F.R. § 212.5(e)(2)(i)).)  As such, "Respondents did not provide Petitioner individualized notice and reasoning *prior* to his

8

arrest and detention . . . and have presented no legitimate reason for why those decisions were made." *Noori*, 807 F. Supp. 3d at 1165 (emphasis added).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing [him] a reason for revocation or giving [him] an opportunity to be heard." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). Civil immigration detention is permissible only to prevent flight or protect against danger to the community. *Zadvydas*, 533 U.S. at 690. Here, there is no evidence that Petitioner's detention would serve either purpose. "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). Indeed, the regulations authorize ICE to release a noncitizen from custody for humanitarian reasons only if the noncitizen "present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Gonazlez Salzar*, 2025 WL 3063629, at *4 (citation omitted). To the contrary, Petitioner has no criminal history and timely applied for asylum relief. (Doc. 1 ¶ 4; Doc. 8 at 9.)

Third, Respondents' interest in detaining Petitioner without reasoning or a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5; *accord Noori*, 807 F. Supp. 3d at 1166–66 (granting habeas petition where summary revocation of the petitioner's parole violated his due process rights).

3:26-cv-00337-RBM-MMP

Based on this review of the *Mathews* factors, the Court concludes that due process requires Petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained.[3]

## IV.    CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 1) is **GRANTED**. Accordingly, the Court further **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[4]

**IT IS SO ORDERED.**

DATE:  March 12, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] In light of the disposition herein, the Court declines to address the Amended Petition's remaining grounds for relief.

[4] This relief has been granted in similar matters. *See Pinchi*, 792 F. Supp. 3d at 1038; *Omer G. G.*, 2025 WL 3254999, at *6.

10

3:26-cv-00337-RBM-MMP